UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

DOUGLAS ROSADO,

    *Plaintiff*,

v.

YADIRA ADORNO-DELGADO,

    *Defendants*.

Civ. No. 22-01182 (MAJ)

## OPINION AND ORDER

On April 19, 2022, Plaintiff Douglas Rosado ("Plaintiff") filed the instant suit against Defendant Yadira M. Adorno Delgado, Esq., ("Defendant") accusing her of legal malpractice. (**ECF No. 1**). Presently before the Court is Defendant's Motion to Dismiss due to Lack of Diversity Jurisdiction (the "Motion"). (**ECF No. 64**). Plaintiff filed a Response (**ECF No. 66**), to which Defendant replied (**ECF No. 75**). For the reasons stated hereafter, the Court **DENIES** Defendant's Motion.

### I.    Factual and Procedural Background

Defendant is a citizen of and resides in the Commonwealth of Puerto Rico.[1] (**ECF No. 1 at 2 ¶¶ 3, 5**). Plaintiff asserts he is a citizen of the State of Maryland. (**ECF No. 1 at 1 ¶¶ 2, 6, 7**). Plaintiff retained Defendant's legal services from September 2017, until September 2018, to represent him in his post-matrimonial community property division

---

[1] Under 28 U.S.C. § 1367(e) "the term 'State' includes … the Commonwealth of Puerto Rico" and will be referred to as such for the purposes of this Opinion and Order. 28 U.S.C. § 1367(e). *Pérez Arritola v. García Muñiz*, 22-cv-01507, 2023 U.S. Dist. LEXIS 52202, at *2 n.1, 2023 WL 2643483 (D.P.R. Mar. 27, 2023).

case filed before the Puerto Rico Court of First Instance ("Court of First Instance"). (**ECF No. 23 at 1 ¶ 1**).

Defendant withdrew from representing Plaintiff on September 17, 2018, allegedly without Plaintiff's prior knowledge. (**ECF No. 1 at 3 ¶ 16**); (**ECF No. 23 at 2 ¶ 4**). Following this, Plaintiff, a licensed attorney, alleges he was unaware of significant case developments, notably a resolution on August 22, 2018 ("August 2018 Resolution"), leading to a detrimental trial court judgment on July 20, 2021.[2] (**ECF No. 1 at 6 ¶ 22**). He also alleges Defendant, without his authorization, agreed on his behalf to self-impose rent in favor of his ex-spouse. He claims damages of $750,000 for this oversight and negligent representation.[3]

On March 15, 2023, the Court held a status conference. (**ECF No. 38**). At the conference, Defendant's counsel raised the issue of diversity, asserting that Plaintiff is actually a citizen of Puerto Rico and has been for the duration of this suit.[4] *Id*. Accordingly, Defendant argued Plaintiff could not have been domiciled in Maryland at the time of filing the instant action, and thus, diversity is not satisfied.[5]

As a result, the Court ordered Plaintiff to provide his residential address by March 24, 2023. *Id*. On March 23, 2023, Plaintiff filed a Motion in Compliance with that Order, where he realleged he is a citizen of the state of Maryland. (**ECF No. 39 at 2 ¶ 3**).

---

[2] From November 16, 2018, until the conclusion of the case, Plaintiff was represented by Edwin Báez, Esq. (**ECF No. 85 at 16**).
[3] More specifically, Plaintiff contends he suffered damages in the amount of $123,827.90 as a result of the August 2018 Resolution; $79,763.50 as a result of the self-imposed rent agreement he allegedly did not consent to; and $25,000 as a result of various fines he received. (**ECF No. 1 at 10 ¶ 47**). The remaining damages are for stress and mental anguish, as well as the punitive damages Plaintiff is seeking. *Id*. at 14 ¶¶ 53-54.
[4] This is not indicated in the meeting minutes, however, the Court's subsequent Order that Plaintiff provide his residential address on or before March 24, 2023, is indicated. (**ECF No. 38**).
[5] The parties do not dispute that Defendant's domicile is Puerto Rico.

However, in lieu of a home address, he provided a P.O. box address, as his "condominium unit . . . is currently in the process of being transferred to his ex-spouse." (**ECF No. 39 at 2 ¶ 4**). He also stated in the motion that he "currently resides and is domiciled in the state of Maryland, and for the foreseeable future, neither of these circumstances are expected to alter." (**ECF No. 39 at 2 ¶ 3**).

The next day, Defendant filed a Motion to Dismiss expressing confusion at this assertion, as during the status conference Plaintiff stated, "that he was currently living in Puerto Rico and that he was basically floating around with no permanent residence."[6] (**ECF No. 40 at 1 ¶ 3**). That same day, the Court filed an Order noting and denying Plaintiff's Motion in Compliance, indicating that Plaintiff was ordered to provide his residential address, not his mailing address. (**ECF No. 41**).

In response to the Court's Order, Plaintiff filed a second Motion in Compliance, where he listed a Maryland residential address and a Connecticut residential address. (**ECF No. 42-1 at 1**). In the motion, he noted that he "had erroneously misunderstood what the Court required of him" in providing a postal address in lieu of a home address. (**ECF No. 42 at 2 ¶ 4**). He then stated that until his ex-spouse formalizes "all required transactions with the lean holder of property[,]" he remains the exclusive owner of the Maryland property, and that the Connecticut property, which he visits frequently, belongs to his sister. (**ECF No. 42-1 at 1**). However, Plaintiff still did not clarify where he resided at the time the action was filed.

Defendant filed the instant Motion, unsatisfied that Plaintiff's Second Motion in Compliance did not resolve the issue of diversity. (**ECF No. 64**). In support, Defendant

---

[6] This motion was mooted by the filing of the motion currently before the Court addressing the same issue.

submitted a certified translation of the July 2021 Judgment divesting Plaintiff of the Maryland property. (**ECF No. 64-2 at 22, 24**). Defendant concedes the judgment was appealed by Plaintiff, but states that it was affirmed on appeal on August 12, 2022. (**ECF No. 64 at 5 ¶ 19**). Defendant also attached what appears to be a letter from Plaintiff's then counsel, relinquishing the keys to the Maryland property on September 22, 2021. However, the letter was in Spanish and therefore, not reviewable by this Court under Local Rule 5(c). (**ECF No. 64-4 at 1**).

In response, Plaintiff submitted—among other things—a sworn statement from his sister stating that "since the summer of 2022," Plaintiff "has spent most of his time residing with me and my husband" in Connecticut. (**ECF No. 66-1 at 1 ¶ 3**). She adds that "other than his frequent commutes back and forth to Maryland and trips to Puerto Rico," he spends most of his remaining time in Connecticut. *Id*. She also states that many of Plaintiff's personal correspondence, including bank and credit card statements, are forwarded to her address. *Id*. at ¶ 4; (**ECF No. 66-2**); (**ECF No. 66-3**).

However, Plaintiff still did not provide an address at the time of filing. (**ECF No. 66**). The Court thus ordered Plaintiff again to submit evidence demonstrating that he satisfies the requirements of diversity of citizenship pursuant to 28 U.S.C. § 1332. (**ECF No. 100**). Plaintiff submitted the following evidence to the Court to establish that his domicile at the time of filing the instant action was and continues to be Maryland:

1. Letter from the Comptroller of Maryland stating he has filed his tax returns with the State of Maryland for tax years 2014 through 2022. (**ECF No. 101-1 at 1**).
2. U.S. Military Retirement Pay Statement indicating the state tax to be withheld is for the State of Maryland. (**ECF No. 101-3 at 1**).
3. Maryland Motor Vehicle Administration form which states his license in Maryland was issued originally on May 11, 2013, and is valid through September 22, 2031. (**ECF No. 101-4 at 1**).

4. A Voter Notification Card for Prince George's County in Maryland that was registered on May 17, 2013.[7] (**ECF No. 101-5 at 1**).

Thereafter, the Court scheduled an evidentiary hearing for January 23, 2024. (**ECF No. 107**).

## II. Legal Standard

Federal courts are courts "of limited jurisdiction," and thus "limited to deciding certain cases and controversies." *Belsito Commc'ns, Inc. v. Decker*, 845 F.3d 13, 21 (1st Cir. 2016) (citing U.S. Const. art. III, § 2). "Diversity jurisdiction allows federal courts to adjudicate controversies between citizens of different states" in which the amount in controversy exceeds $75,000. *BRT Mgmt. LLC v. Malden Storage LLC*, 68 F.4th 691, 695 (1st Cir. 2023) (first citing U.S. Const. art. III, § 2; and then citing 28 U.S.C. § 1332); 28 U.S.C. § 1332.

"For the purposes of diversity, a [party] is a citizen of the state in which he is domiciled." *Padilla-Mangual v. Pavía Hosp.*, 516 F.3d 29, 31 (1st Cir. 2008) (citations omitted). Domicile is "the place where [a party] has his true, fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Meléndez-García v. Sánchez*, 629 F.3d 25, 41 (1st Cir. 2010) (quoting *Padilla-Mangual*, 516 F.3d at 31). According to the United States Court of Appeals for the First Circuit, there are a variety of factors relevant to determining a party's domicile, which include but are not limited to:

> current residence; voting registration and voting practices; location of personal and real property; location of brokerage and bank accounts;

---

[7] The card appears to have an "X" drawn across it. (**ECF No. 101-5**). However, a search on the Maryland "Voter Lookup" reveals Plaintiff is still an active voter in Maryland. *See* https://voterservices.elections.maryland.gov/votersearch; *see also Montilla v. Fed. Nat'l Mortg. Ass'n*, 999 F.3d 751, 760 n. 8 (1st Cir. 2021) (citing Fed. R. Evid. 201 which permits a court to take judicial notice of an adjudicative fact sua sponte "at any stage of the proceeding").

membership in unions, fraternal organizations, churches, clubs, and other associations; place of employment or business; driver's license and other automobile registration; [and] payment of taxes.

*Aponte–Dávila v. Municipality of Caguas*, 828 F.3d 40, 46 (1st Cir. 2016) (quoting *García Pérez v. Santaella*, 364 F.3d 348, 350 (1st Cir. 2004)). "No single factor is dispositive, and the analysis focuses not simply on the number of contacts with the purported domicile, but also on their substantive nature." *Id*. at 47 (quoting *García Pérez*, 364 F.3d at 350).

Importantly, "diversity jurisdiction is determined at the time of the filing of the Complaint and once established, a subsequent change in domicile will not defeat the existence of diversity." *Rivera-Pedrogo v. Villamil-Wiscovitch*, No. 22-cv-1039, 2023 WL 2601999, at *3 (D.P.R. Mar. 21, 2023) (citing *Bank One, Texas, N.A. v. Montle*, 964 F.2d 48, 49 (1st Cir. 1992)). However, "[t]hough events that happen after the filing of the [C]omplaint are 'not part of the primary calculus,' they still 'bear on the sincerity of a professed intention to remain.'" *Aponte–Dávila*, 828 F.3d at 52 (quoting *García Pérez*, at 351).

"Under Fed. R. Civ. P. 12(b)(1), a party may contest the court's subject matter jurisdiction by challenging the allegations in the complaint as insufficient on their face or by questioning the accuracy of those allegations." *Hernández-Santiago v. Ecolab, Inc.*, 397 F.3d 30, 33 (1st Cir. 2005). This is otherwise termed as either a "facial" or "factual" attack. *Pérez-Rodríguez v. United States,* 22-cv-1135, 2023 WL 2789542, at *3 (D.P.R. Mar. 31, 2023).

"In facial challenges, sometimes called sufficiency challenges, the movant accepts the nonmovant's jurisdictionally significant facts but challenges their sufficiency to confer subject-matter jurisdiction." *Id*. (internal citations and quotations omitted). "But in

factual challenges, the movant contests the nonmovant's jurisdictionally significant facts, requiring the court to engage in judicial factfinding to resolve the merits of the jurisdictional claim." *Id.* (internal citations and quotations omitted). In conducting said judicial factfinding, "the [C]ourt may conduct a broad inquiry, taking evidence and making findings of fact." *Hernández-Santiago v. Ecolab, Inc.*, 397 F.3d 30, 33 (1st Cir. 2005) (citation omitted).

Importantly, "[t]he burden of establishing federal diversity jurisdiction rests on . . . the party invoking federal jurisdiction." *BRT Mgmt. LLC*, 68 F.4th at 695 (quoting *Carozza v. CVS Pharm., Inc.*, 992 F.3d 44, 51 (1st Cir. 2021). "Once challenged, the party invoking diversity jurisdiction must prove domicile by a preponderance of the evidence." *García Pérez*, at 350.

### III. Analysis

The Court understands that it is faced with a "factual challenge" of the jurisdictional facts asserted by Plaintiff. As such, the Court is tasked with making findings of fact to determine whether, at the time of filing the instant action on April 19, 2022, there was diversity of citizenship between the parties. *Rivera-Pedrogo*, 2023 WL 2601999, at *3.

Defendant maintains in the instant motion that Plaintiff, for the duration of this suit, has been domiciled in Puerto Rico. (**ECF No. 64**). However, based on the evidence presented on the record and at the evidentiary hearing,[8] the Court finds that Plaintiff has proven by a preponderance of the evidence that he was domiciled in the State of Maryland

---

[8] At the hearing, in addition to testifying himself, Plaintiff called his sisters Nancy Rosado and Rosa Estelle Rosado-Negrón to testify, as well as his daughter Nina Rosado, and friend Pedro Medina. Defendant's only witness was Plaintiff.

at the time of filing. *See García Pérez*, at 350-51. Accordingly, diversity jurisdiction under 28 U.S.C. § 1332 is satisfied.

The facts found by the Court are the following:

1. Plaintiff relocated from Puerto Rico to the State of Maryland in 2013. (**Transcript at 68:17-22**).
2. Plaintiff owned real property in the State of Maryland until at least July of 2021. (**Transcript at 69:7-14**).
3. Plaintiff became a registered voter in the State of Maryland in 2013. (**ECF No. 101-5 at 1**).
4. Plaintiff obtained a driver's license issued by the State of Maryland in 2013, which is valid through 2031. (**ECF No. 101-4 at 1**).
5. Plaintiff has filed tax returns for the tax years 2014 through 2022 in the State of Maryland. (**ECF No. 101-1 at 1**).
6. After the state court judgment divested Plaintiff of his real property in Maryland, he stored most of his belongings in a Maryland storage facility, where they have remained. (**Transcript at 21:14-17, 43:13-19**).
7. Once Plaintiff moved out of the Maryland property in 2021, he spent much of his time back and forth between Maryland, Connecticut, and Puerto Rico. *Id.* at 26:8-11. Plaintiff always returned to Maryland.
8. Both Plaintiff and his two sisters testified that when he was in Maryland, he stayed with a neighbor in his old building, Ms. María Flores. *Id.* at 12:1-15, 32:8-23, 75:5-24, 76:4-12. Both Plaintiff and his two sisters testified that when he was in Connecticut, he stayed with his sister. *Id.* at 13:6-15, 18:19-19:9, 40:6-25. The nature of his stay there was always temporary. *Id.*
9. Plaintiff does not own or rent real property in Puerto Rico. *Id.* at 20:13-24.
10. All witnesses testified that Plaintiff has not lived in Puerto Rico since 2013. They all identified Maryland as his domicile.

The Court—emphasizing that no single factor is conclusive—finds that these facts, together with the factors the First Circuit has identified to determine domicile, demonstrate Plaintiff was domiciled in Maryland at the time of filing. *See Aponte–Dávila*, at 46 (listing the factors). Four key factors collectively indicate a Maryland domicile: voter registration, location of personal property, driver's license, and payment of taxes. These factors, which existed at the time of suit—and are ongoing—align with the First Circuit's approach that considers both the quantity and substantive nature of contacts with the purported domicile. *Id.* ("No single factor is dispositive, and the analysis focuses not

simply on the number of contacts with the purported domicile, but also on their substantive nature."). Most notably, the First Circuit has recognized that "the place a person is registered to vote is a 'weighty' factor in determining domicile." *Padilla-Mangual*, at 32 (quoting *Lundquist v. Precision Valley Aviation, Inc.*, 946 F.2d 8, 12 (1st Cir. 1991)). Plaintiff's Maryland voter registration thus weighs heavily in favor of finding Maryland to be his domicile. *Id*.

In arguing Plaintiff was not a citizen of Maryland at the time of filing, Defendant places great emphasis on Plaintiff's lack of residence in Maryland beyond the year 2021. (**Transcript at 101:16-19**). However, residence alone is not dispositive of a domicile determination. *Aponte–Dávila*, at 48 ("While the district court was certainly correct that residence is relevant to the question of domicile and that representations of one's residence in certain circumstances are entitled to significant weight, the court erred by placing altogether too much emphasis on this factor in light of the circumstances." (internal citations and quotations omitted)). "[R]esidency and citizenship are not interchangeable. [C]itizenship or domicile, not residence, is the basis of subject matter jurisdiction." *Aponte–Dávila*, at 49 (internal citations and quotations omitted). Moreover, "a party may reside in more than one state but can be domiciled, for diversity purposes, in only one." *Lundquist*, 946 F.2d at 10. Accordingly, Plaintiff's lack of full-time residence in Maryland at the time of filing and currently, does not automatically compel a finding that Maryland is not his domicile. This is especially true considering that he has demonstrated significant contacts with Maryland through his tax filings, voter registration, location of personal property, and vehicle registration.

Regardless, Plaintiff spent a considerable amount of time in Maryland leading up to the filing of this action. (**Transcript at 13:6-15, 16:9-17, 16:21-17:2, 18:9-19:3,**

**19:18-20:6, 21:9-24, 26:8-11, 28:16-29:6, 30:1-25, 31:4-33:6, 36:2-17, 39:16-20, 46:15-22, 65:17-24, 68:17-22, 69:7-9, 75:5-24, 94:11-25, 102:19-25**). Even though each stay was temporary, Plaintiff testifies, and his actions reflect, he is and has been trying to find a permanent home in Maryland in the wake of his divorce, even going as far as signing a short-term lease in 2023. *Id.* at 75:25-77:24. This reflects on the sincerity of Plaintiff's "professed intention to remain." *Aponte–Dávila,* at 52 (quoting *García Pérez,* at 351).

Moreover, there is a presumption of continuing domicile. *Meléndez-Garcia*, 629 F.3d at 41; *see also Padilla-Mangual*, at 31 ("domicile once acquired is presumed to continue until it is shown to have been changed") (internal citations omitted). As mentioned, four of the factors outlined by the First Circuit indicate a Maryland domicile. And up until 2021, Plaintiff owned real property there, where he resided full time. (**Transcript at 21:14-24**). Thereafter, apart from Plaintiff's short-term stays in Puerto Rico, there is no additional evidence to suggest his domicile changed to Puerto Rico before the commencement of this action. Accordingly, the Court is unpersuaded by Defendant's argument that Plaintiff is a citizen of Puerto Rico.

At the hearing, Defendant also argued, without citing to any legal authority, that because Plaintiff does not have a permanent residence anywhere—and did not at the time of filing—he does not meet the requirements for diversity in federal court. *Id.* at 92:25-94:9. The Court is not persuaded. "[E]very person, even the homeless or transient, must have a domicile somewhere, [] whether it be his last acquired state of citizenship, [] or a new state wherein he was both physically present and intended to remain indefinitely." *Cloyce v. Macy's Dep't Store*, 05-cv-597, 2006 WL 983931, at *2 (S.D.N.Y. Apr. 12, 2006) (internal citations omitted). To suggest otherwise would deny diversity to any person with

a transient lifestyle, a proposition that has been repeatedly rejected by district courts. *Core VCT PLC v. Hensley*, 89 F. Supp. 3d 104, 111 (D.D.C. 2015) (rejecting the proposition diversity jurisdiction should be denied to any person with a transient lifestyle); *Henning v. Day*, 15-cv-927, 2016 WL 1068482, at *10 (M.D. Fla. Mar. 18, 2016) (finding a plaintiff that lived out of his van and travelled between Florida and Arizona was domiciled in Arizona); *Oslzly v. Mendlewicz*, 15-cv-5681, 2015 WL 7575902, at *4 (E.D.N.Y. Nov. 25, 2015) ("Every person, even the homeless or transient, must have a domicile somewhere. . . ." (citing *Cloyce*, 2006 WL 983931)).

Accordingly, even if the Court were to consider Plaintiff transient, at the very least it is clear that his last state of domicile is Maryland, and apart from his short stays after being divested of the Maryland property, there is no evidence to suggest that his domicile changed to Puerto Rico. Therefore, based on the totality of the circumstances, the Court finds Plaintiff was domiciled in Maryland at the time this action commenced.

### IV. Conclusion

Accordingly, for the reasons stated above, Defendant's Motion to Dismiss (**ECF No. 64**) is **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 8th day of February 2024.

*/s/ María Antongiorgi-Jordán*
**MARIA ANTONGIORGI-JORDAN**
**UNITED STATES DISTRICT JUDGE**