UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

DOUGLAS ROSADO,

    *Plaintiff*,

v.

YADIRA ADORNO-DELGADO,

    *Defendant*.

Civ. No. 22-01182 (MAJ)

## OPINION AND ORDER

### I.  Introduction

On April 19, 2022, Douglas Rosado-Negrón ("Plaintiff") initiated this action against Yadira M. Adorno-Delgado, Esq. ("Defendant"), who, from 2017 to 2018, served as one of his legal counsels in his dissolution of marital property action.[1] (**ECF No. 1**). Plaintiff alleges Defendant is liable to him for legal malpractice pursuant to the laws of Puerto Rico. *Id.* For the reasons stated hereafter, the Court **GRANTS Summary Judgment** in Defendant's favor sua sponte, thereby summarily dismissing this action.[2]

---

[1] During the pendency of the State Case, four attorneys withdrew from Plaintiff's legal representation, including the Defendant. From November 2018 until the conclusion of the State Case, Plaintiff was represented by counsel Báez.

[2] As an initial matter, while not raised by either party, federal courts have an obligation to inquire as to their subject matter jurisdiction sua sponte. *See One & Ken Valley Hous. Grp. v. Maine State Hous. Auth.*, 716 F.3d 218, 224 (1st Cir. 2013). Here, Plaintiff filed the Complaint on April 19, 2022. (**ECF No. 1**). Thereafter, Defendant filed a motion to dismiss arguing Plaintiff's case was time-barred. (**ECF No. 23**). The Court denied Defendant's motion, noting that legal malpractice actions are subject to a one-year statute of limitations and that the limitations period begins to run—in legal malpractice actions specifically—"the moment [the plaintiff] becomes aware of the *final and firm decision of the litigation* in which negligence is accused of his legal representative." *Colegio Mayor de Tecnología. v. Rodríguez-Fernández*, 194 D.P.R. 635, 651–52 (P.R. 2016) (emphasis added). Because the State Court judgment was entered in July 2021, the Court found that Plaintiff had until July 2022 to file the instant action, and thus, was within the statute of limitations by filing in April 2022. (**ECF No. 36**).

However, in reviewing the record since then, the Court has come to realize that Plaintiff appealed the State Court judgment to the Puerto Rico Court of Appeals, which handed down its final order on August 12, 2022. *See Rosado-Negrón v. Rivera-Padilla*, 2015-0528, 2022 WL 4139402 (P.R. Cir. Aug. 12, 2022). Accordingly, when Plaintiff filed his Complaint, this action was premature, and he lacked the requisite

## II. Relevant Procedural and Factual Background

Plaintiff's legal malpractice claim against Defendant rests on two discrete alleged acts. First is Defendant's purported failure to obtain Plaintiff's consent when she allegedly entered into a binding "self-imposed rent agreement" in favor of his ex-spouse. Plaintiff alleges that "[b]ased on [Defendant's] binding agreement with opposing counsel, the court adjudicate[d] rent[] credits against [Plaintiff] and in favor of his ex-wife upwards of $79,763.50." (**ECF No. 85 at 23**). The second is Defendant's alleged failure to notify Plaintiff of his "right" to appeal a Resolution issued by the State Court on August 22, 2018. (**ECF No. 85 at 17**).

On July 14, 2023, the parties filed cross motions for summary judgment. (**ECF Nos. 84, 85**). On March 12, 2024, the Court denied Plaintiff's motion for failing to comply with Local Rule 56 and denied Defendant's for not meeting the summary judgment burden on either allegation. (**ECF No. 113**).

On March 22, 2024, Defendant filed a Motion for Reconsideration of the denial of her motion for summary judgment. (**ECF No. 117**). Defendant put forth several theories in this motion, including renewing an argument regarding the expiration of the statute of

---

standing to pursue this action. *See Reddy v. Foster*, 845 F.3d 493, 500 (1st Cir. 2017) ("Much as standing doctrine seeks to keep federal courts out of disputes involving conjectural or hypothetical injuries, the Supreme Court has reinforced that [the] ripeness doctrine seeks to prevent the adjudication of claims relating to contingent future events that may not occur as anticipated, or indeed may not occur at all.").

That said, defects in subject matter jurisdiction can generally be cured through supplemental pleadings. *U.S. ex rel. Gadbois v. PharMerica Corp.*, 809 F.3d 1, 5 (1st Cir. 2015) (noting that other circuit courts have found that "the expiration of a jurisdictional waiting period can be shown through a supplemental pleading in order to salvage an otherwise premature complaint."). The mechanism deemed appropriate by the First Circuit is Federal Rule of Civil Procedure 15(d). *Id.* ("So, too, Rule 15(d) has been viewed as an appropriate mechanism for pleading newly arising facts necessary to demonstrate standing."). In the interest of judicial economy, the Court will not order Plaintiff to supplement his pleadings at this stage of the proceedings when the necessary facts to cure the defect are readily available. *Rosado-Negrón v. Rivera-Padilla*, 2015-0528, 2022 WL 4139402 (P.R. Cir. Aug. 12, 2022). In light of the final order issued by the Puerto Rico Court of Appeals, Plaintiff's claims are now ripe for adjudication.

limitations, and arguing that the doctrine of res judicata should be applied to Plaintiff's claims. Defendant also made reference to Plaintiff's version of the facts put forth in the Parties' Joint Pretrial Report, filed on March 12, 2024. (**ECF No. 116**). The Pretrial Report was not yet available when this Court published its Order denying Defendant's Motion for Summary Judgment. (**ECF No. 113**).[3]

On March 26, Plaintiff filed his response to Defendant's Motion for Reconsideration, arguing that Defendant had failed to raise new, specific evidence in her Motion. (**ECF No. 118**).

### III.  Summary Judgment Sua Sponte

Despite the lack of argumentation by Defendant on some of the claims pending against her, the Court cannot ignore the evidence on the record warranting summary judgment in her favor. A district court may enter summary judgment sua sponte if and only if two conditions are met: "First, discovery must be sufficiently advanced that the parties have enjoyed a reasonable opportunity to glean the material facts. Second, the court must first give the targeted party appropriate notice and a chance in accordance with the rules to present its evidence on the essential elements of the claim or defense.'"

---

[3]  While the Court dismisses Plaintiff's claims sua sponte, it notes Defendant's pending motion for reconsideration **(ECF No. 117)** which requests reconsideration of the Court's prior Order denying summary judgment in her favor on these claims. (**ECF No. 113**). The granting of a motion for reconsideration is "an extraordinary remedy which should be used sparingly." *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006). To succeed on such a motion, "the movant must demonstrate either that newly discovered evidence (not previously available) has come to light or that the rendering court committed a manifest error of law." *Id.*; *see also Cruz v. Mun. of Lajas*, 19-cv-1119, 2022 WL 7967087, at *1 (D.P.R. Oct. 14, 2022). The Court is not convinced that Defendant's Motion rises to this high standard. Defendant's Motion neither presents newly available evidence nor articulates a manifest error of law on the part of this Court which compels summary judgment in her favor. Because the Motion for Reconsideration will be mooted by the present Order, the Court declines to specifically address the merits of each argument raised. Still, the Court has reviewed and considered the parties' motions at ECF No. 113 and 118, as well as the Joint Pretrial Report at ECF No. 116.

*Wells Real Est. Inv. Tr. II, Inc. v. Chardon/Hato Rey P'ship, S.E.*, 615 F.3d 45, 51 (1st Cir. 2010) (internal citations quotations omitted).

"Notice" does not require that the party "receive a formal document called 'notice' or that the district court had to say the words 'you are on notice' or even that the court had to explicitly tell [the party] 'I am thinking of ordering summary judgment for [the opposing party] sua sponte.'" *Nat'l Expositions, Inc. v. Crowley Mar. Corp.*, 824 F.2d 131, 133 (1st Cir. 1987) (internal citations and quotations omitted). Rather, "[i]n this context, 'notice' requires that the nonmovant was given reason to believe the court might reach the issue and received a fair opportunity to put its best foot forward." *Wells Real Est.*, 615 F.3d at 52 (citations omitted).

In the instant case, discovery has concluded, both parties have already submitted summary judgment motions, and the case is trial ready. The two issues decided here are the exact same issues which were the basis for Defendant's motion for summary judgment.[4] (**Dkt. No. 85 at 17, 19, 26**). Plaintiff not only filed a motion for summary judgment, but he also responded to Defendant's dispositive motion. (**ECF No. 98**). Accordingly, Plaintiff had every "reason to believe the court might reach" these issues on summary judgment, and had a "fair opportunity to put [his] best foot forward." *Wells Real Est.*, 615 F.3d at 52. Because both parties have had ample opportunity to argue, and have in fact argued, the issues decided below, any prejudice from a lack of further notice has

---

[4] While Plaintiff's Motion for Summary Judgment was denied on procedural grounds (**ECF No. 113**), in light of the fact that he is a practicing attorney, he was able to put his "best foot forward" and elected not to do so. *Wells Real Est.*, 615 F.3d at 52; *see also Huffman v. Lindgren*, 81 F.4th 1016, 1020–21 (9th Cir. 2023) ("[T]he circuits that have reached the issue speak with one voice: they have uniformly declined to extend the liberal pleading standard to pro se attorneys."); *see also Ryan McCurley v. Citigroup Glob. Mkts. Holdings Inc.*, 22-cv-1031, 2023 WL 2652623, at *2 (D.P.R. Mar. 27, 2023) ("Although courts construe a pro se plaintiff's complaint liberally, 'there is a long line of authority rejecting the notion that pro se litigants in [] civil . . . cases are entitled to extra procedural swaddling.'") (quoting *Eagle Eye Fishing Corp. V. U.S. Dep't of Commerce*, 20 F.3d 503, 506 (1st Cir. 1994)).

been obviated. *See Gen. Battery Int'l Corp. v. Unión de Servicios y Mantenimientos Industriales de Puerto Rico*, 678 F. Supp. 33, 36 (D.P.R. 1988) (noting that in moving for summary judgment, the plaintiff was afforded an opportunity to present the Court with all of its evidence and therefore no further notice was required to grant summary judgment sua sponte in favor of the non-moving defendant). The Court will thus address the merits of Plaintiff's claims sua sponte.

    **a. Legal Standard**

Summary judgment is appropriate when there is no dispute as to any material fact and only questions of law remain. *White v. Hewlett Packard Enterprise Co.*, 985 F.3d 61, 68 (1st Cir. 2021). "A genuine dispute is one that a reasonable factfinder could resolve in favor of either party." *Flood v. Bank of Am. Corp.*, 780 F.3d 1, 7 (1st Cir. 2015). "[A] fact is 'material' if it 'has the potential of affecting the outcome of the case.'" *Taite v. Bridgewater State U., Bd. of Trustees*, 999 F.3d 86, 93 (1st Cir. 2021) (citation omitted). To survive, the party facing summary judgment must "produce evidence that, if it is credited, would permit a factfinder to resolve the case in [his] favor." *White*, 985 F.3d at 68 (citations omitted).

The Court must consider the facts in the light most agreeable to the party facing summary judgment, but may "afford no evidentiary weight to conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative." *Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011) (citations omitted). "In addition, the 'absence of evidence on a critical issue weighs against the party—be it the movant or the nonmovant—who would bear the burden of proof on that issue at trial.'" *Jelú-Iravedra v. Mun. of Guaynabo*, 16-cv-1585, 2018 WL 1725463, at *2 (D.P.R. Mar. 30, 2018) (quoting *Alamo-*

*Rodríguez v. Pfizer Pharms., Inc.*, 286 F. Supp. 2d 144, 151 (D.P.R. 2003)). The goal of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Carrozza v. CVS Pharmacy, Inc.*, 992 F.3d 44, 56 (1st Cir. 2021) (citation omitted).

### b. Findings of Fact

1. Plaintiff is a licensed attorney in the jurisdiction of Puerto Rico. (**ECF No. 84 at 1, ¶ 2**).

2. From around August 2017 to September 2018, Defendant represented Plaintiff in the case of *Rosado-Negrón v. Rivera-Padilla*, KAC2015-0528 before the Puerto Rico Court of First Instance ("State Case"), regarding his dissolution of marital property. (**ECF No. 84 at 4, ¶ 16**).

3. On March 21, 2018, a hearing took place in the State Case wherein Defendant contacted Plaintiff requesting his preferred appraiser for purposes of appraising the Maryland property. (**ECF No. 85-1 at 2, ¶ 3**).

4. Plaintiff provided the name of his preferred appraiser to Defendant. (**ECF No. 85-1 at 2, ¶ 3**).

5. The appraiser Plaintiff suggested to Defendant, CoreLogic Valuation Solutions, is reflected in an agreement reached on March 21, 2018 ("The March 21 Agreement"). (**ECF No. 85-1 at 2, ¶ 3**); (**ECF No. 85-3 at 2, ¶ 8**).

6. The March 21 Agreement is the agreement Plaintiff takes issue with as it pertains to his allegation that Defendant agreed to self-impose rent on behalf of Plaintiff in favor of his ex-spouse. (**ECF No. 85 at 19–23**); (**ECF No. 85-3 at 1–4**).

7. The March 21 Agreement does not stipulate to a rent credit or splitting of assets in favor of either party. (**ECF No. 85-3 at 1–4**).

8. A Resolution was entered by the State Court on August 22, 2018 ("August 22 Resolution"). (**ECF No. 116 at 21, ¶ 25**); (**ECF No. 85-2 at 1–3**).

9. The August 22 Resolution adjudicates some credits in favor of Mr. Rosado's ex-spouse as part of the liquidation of community property. (**ECF No. 85-2 at 1–3**).

10. Defendant withdrew from the case on September 17, 2018. (**ECF No. 84 at 4, ¶ 16**); (**ECF No. 84-3 at 10**).

11. On June 24, 2021, after trial was held, the State Court issued its Judgment in the State Case for liquidation of community property. (**ECF No. 87-1 at 6–25**). The Judgment included the findings of the August 22 Resolution. *Id.* at 7.

12. At trial, plaintiff was represented by attorney Báez. (**ECF No. 84 at 8, ¶ 31**).

13. Plaintiff appealed the State Court judgment to the Puerto Rico Court of Appeals, which upheld the judgment in its entirety. *Rosado-Negrón v. Rivera-Padilla*, 2015-0528, 2022 WL 4139402 (P.R. Cir. Aug. 12, 2022).[5]

14. Plaintiff filed this case on April 19, 2022. (**ECF No. 1**).

### c. Applicable Law and Analysis

As this is a diversity action, Puerto Rico law provides the substantive rules of decision. *Alemán-Pacheco v. Universal Grp., Inc.*, 638 Fed. Appx. 15, 15 (1st Cir. 2016) (citations omitted). "[U]nder Puerto Rico law, 'attorneys . . . are liable for their professional negligence in accordance with Puerto Rico Civil Code § [1536].'"[6] *Cont'l Cas. Co. v. Angelet-Frau*, 16-cv-2656, 2020 WL 12761551, at *2 (D.P.R. June 1, 2020) (quoting *Martínez-Marrero v. González-Droz*, 180 D.P.R. 579, 592 (P.R. 2011)). To state a plausible legal malpractice claim under Puerto Rico law, a plaintiff must show: "(1) the existence of an attorney-client relationship giving rise to a duty; (2) that the attorney, either by act or omission, breaches it; (3) that said breach of duty be the proximate cause of the injury to the client; and (4) that the plaintiff client sustains actual damage or loss."

---

[5]   Courts may take "judicial notice of the fact that another proceeding took place, or of certain other undisputable aspects of those proceedings. Thus, courts may take judicial notice of another court's order for the limited purpose of recognizing the judicial act or the subject matter of the litigation." *MVM Inc. v. Rodriguez*, 568 F. Supp. 2d 158, 164 (D.P.R. 2008) (citing *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994); *Díaz-Morales v. Rubio-Paredes*, 170 F. Supp. 3d 276, 281 n.2 (D.P.R. 2016) (citing same). The Court thus takes judicial notice of the fact the Puerto Rico Court of Appeals upheld the State Court judgment in its entirety.

[6]   Under the new Puerto Rico Civil Code which came into effect in 2020, Article 1802 was replaced by Article 1536. *Dumanian v. FirstBank Puerto Rico*, 22-cv-1543, 2024 WL 197429, at *3 n.4 (D.P.R. Jan. 17, 2024). "[A]ll caselaw referencing or analyzed under the now defunct Article 1802 remains in effect and will be applied to any actions brought pursuant to Article 1536 of the Puerto Rico Civil Code of 2020." *Id.*

*Portugués-Santana v. Rekomdiv Int'l., Inc.*, 725 F.3d 17, 25 (1st Cir. 2013) (quoting *Colón-Prieto v. Géigel*, 15 P.R. Offic. Trans. 313, 321 (P.R. 1984)).

### i. Self-Imposed Rent Agreement[7]

Beginning with Plaintiff's first claim, Plaintiff has consistently maintained that Defendant entered Plaintiff into a "self-imposed rent agreement" in favor of his ex-spouse. (**ECF No. 98 at 5**). This Agreement, he alleges, effectively gave the State Court leave to divide in half the value of his vehicle and the value of the time he exclusively used their Maryland property, and thereafter, credit both parties accordingly. He maintains this amounts to a breach of the attorney-client relationship between him and Defendant, which caused him $79,763.50 in damages. (**ECF No. 85 at 23**).

However, while not cited to by Defendant, Plaintiff did in fact attach the March 21 Agreement to his motion for summary judgment.[8] (**ECF No. 85-3 at 1–4**). The document is titled "Joint Motion on Production of Documents and Selection of Binding Appraisers" and the relevant sections states:

Selection of Binding Property Appraisers

The parties agreed that the appraiser of the property of Puerto Rico and making the rent study will be Katheleen Fernández Tel. 787-360-9658 Cost: $350.00 (includes appraisal of the property and rent study) Quote as of March 21, 2018.

The parties agreed that the appraiser of the Maryland property and making the rent study will be CoreLogic Valuation Solutions — A national company operating in Maryland. Cost: $450.00 (includes appraisal of the property and rent study) Quote as of March 21, 2018.

---

[7] The parties do not dispute that there was an attorney-client relationship between the two in the underlying domestic relations matter. The first element of this legal malpractice claim is thus satisfied. The Court therefore looks to the second element, which is whether Defendant breached her duty to Plaintiff as his attorney.

[8] Defendant did not respond to Plaintiff's motion for summary judgment, nor point to the Agreement in her own motion for summary judgment (**ECF No. 84**) or pending motion for reconsideration (**ECF No. 117**).

(**ECF No. 85-3 at 2**).

In referencing this document, Plaintiff first cites to the State Court judgment, which states: "After the Pretrial Conference Report, by Joint Motion, [on] March 21, 2018, the parties stipulated to *binding appraisers* for the value of the properties and the rent study." (**ECF No. 85 at 22**) (emphasis added). Thereafter, he states that "[b]ased on [Defendant's] binding agreement with opposing counsel, the court adjudicate rents [sic] against [Plaintiff] and in favor of his ex-spouse upwards of $79,763.50 ($159,527.00/2)." (**ECF No. 85 at 23**).

Plaintiff has misapprehended the nature of this Agreement. A plain reading of the document demonstrates Defendant did not enter into a "self-imposed rent agreement" on behalf of Plaintiff, but merely stipulated to who would be appraising the Puerto Rico and Maryland real properties and conducting the rental studies. In other words, the Agreement only concerns a rental study. There is absolutely no mention of the rent credit in favor of his ex-spouse to which Plaintiff alleges this Agreement bound him.

Still, Plaintiff has maintained throughout this litigation that a rent credit was awarded to his ex-spouse because of a purported "self-imposed rent agreement" that Defendant entered into on his behalf. (**ECF No. 85 at 23**). However, apart from his self-serving testimony on the matter–which itself is not abundantly clear–he offers no other evidence of said agreement. And while self-serving testimony can be sufficient to withstand summary judgment, it is "subject to judicial skepticism when . . . contradicted by other evidence." *Palmas Del Mar Homeowners Ass'n v. Fox*, 06-cv-163, 2008 WL 901950, at *5 (D.P.R. Mar. 31, 2008); *Hernández v. Hosp. Episcopal San Lucas, Inc.*, 08-cv-1966, 2010 WL 3490180, at *4 (D.P.R. Sept. 1, 2010) (citing same).

Here, per Plaintiff's own admissions, on March 21, 2018, Defendant contacted him during and/or after a hearing and requested he provide her with a name of an appraiser to perform an appraisal of the Maryland property. (**ECF No. 85-1 at 2, ¶ 3**). Plaintiff recommended "CoreLogic Valuation Solution," a "company that was provided to [him] by Wells Fargo, the mortgage bank for the property in Maryland." *Id*. A reading of the Agreement clearly demonstrates that the appraiser of the Maryland property and the one making the rent study was the one recommended by Plaintiff.

Moreover, the Agreement also demonstrates that there was no rent credit imposed on him as a result of the same. Instead, the Agreement simply stipulated that a rental study be completed to appraise the properties in Puerto Rico and Maryland. Finally, the Agreement does not mandate a splitting of the assets or make reference to any credits to be received by the parties, nor has Plaintiff proffered any other evidence suggesting as much.

Therefore, the Court concludes that there was no breach of duty on the part of Defendant. She simply complied with a court order after consulting with Plaintiff.[9] Thus,

---

[9] To be clear, the Court's inquiry ends here. However, while not cited to in any meaningful way, the State Court judgment is attached to Defendant's motion for summary judgment. (**ECF No. 84-2**). The Court is not interested in—nor does it have the authority—to revisit the judgment in the underlying State Case. However, the Court cites to components of the judgment here insofar as they may provide further clarity to Plaintiff.

In outlining the applicable law, the State Court cites to 31 L.P.R.A. § 3621 from the Puerto Rico Civil Code of 1930, which states: "by virtue of the conjugal partnership the earnings or profits indiscriminately obtained by either of the spouses during the marriage shall belong to the husband and the wife, *share and share alike*, upon the dissolution of the marriage." § 3621 Conjugal partnership; ownership of earnings and profits, 31 L.P.R.A. § 3621 (emphasis added). Thereafter, the State Court cites to *Lilliam Díaz-Lizardi v. Aguayo-Leal*, 162 D.P.R. 801, 813 (2004), where the Supreme Court of Puerto Rico determined that "one of the community members cannot use the common property exclusively and in their own benefit without paying the compensation corresponding to the rest." (**ECF No. 84-2 at 12**).

In applying said law, the State Court noted that Plaintiff did not allow his ex-spouse access to the real property in Maryland after the divorce, and in fact posted the property on the rental market. *Id*. at 16. Accordingly, the State Court, in "applying the current jurisprudence," allowed the exclusive use credit requested by Plaintiff's ex-spouse to proceed. *Id*.

In determining the amount to be credited to Plaintiff's ex-spouse, the State Court noted that "the parties have stipulated *binding appraisers*." *Id*. (emphasis added). However, "[P]laintiff did not comply

there is no genuine issue of material fact which would allow Plaintiff to succeed as to this claim, and Summary Judgment is **GRANTED** in Defendant's favor on this issue.

### ii. The August 22 Resolution[10]

Moving to Plaintiff's second claim, Plaintiff maintains that Defendant failed to inform him of the August 22 Resolution entered by the State Court, thereby depriving him of his "right" to appeal that Resolution. (**ECF No. 85 at 17**). This failure, he alleges, amounts to a breach of the attorney-client relationship and caused him to suffer monetary damages.

Plaintiff has not presented any evidence supporting that he had a right to appeal the August 22 Resolution. The 'absence of evidence on a critical issue weighs against the party—be it the movant or the nonmovant—who would bear the burden of proof on that issue at trial.'" *Jelú-Iravedra v. Mun. of Guaynabo*, 16-cv-1585, 2018 WL 1725463, at *2 (D.P.R. Mar. 30, 2018). To state a plausible legal malpractice claim under Puerto Rico law, a plaintiff must show: "(1) the existence of an attorney-client relationship giving rise to a duty; (2) that the attorney, either by act or omission, breaches it; (3) that said breach of duty be the proximate cause of the injury to the client; and (4) that the plaintiff client

---

with the stipulation and the repeated orders from this Court to endeavor the *rental study* of the property he used." *Id*. (emphasis added). Accordingly, the State Court granted "total credibility to the testimony of [Plaintiff's ex-spouse] and the evidence presented by her that the rent of this apartment was around $2,000.000 per month." *Id*. It thereafter determined that "[P]laintiff has used exclusively and without allowing access to [his ex-spouse] of the real property for 67 months . . . resulting in the amount of $134,000.00 for rent income." *Id*. A credit of $67,000 was then awarded to Plaintiff's ex-spouse. *Id*.
    So, while Plaintiff maintains that this credit to his ex-spouse arose from a purported "self-imposed rent agreement" that Defendant entered into on his behalf, the State Court judgment indicates otherwise. The decision to credit Plaintiff's ex-spouse for the time he exclusively used the Maryland property was not a result of a stipulated rent credit agreement. The rent credit was awarded in accordance with Puerto Rico law, upon request by Plaintiff's ex-spouse for his exclusive use of the marital property. Plaintiff was given a similar credit for his ex-spouse's exclusive use of their real property in Puerto Rico. *Id*. at 17.

[10]    The parties do not dispute that there was an attorney-client relationship between the two in the underlying domestic relations matter. The first element of this legal malpractice claim is thus satisfied. The Court therefore looks to the remaining elements of Plaintiff's legal malpractice claim.

sustains actual damage or loss." *Portugués-Santana*, 725 F.3d at 25. Even accepting as true Plaintiff's contention that Defendant did not specifically inform him of the August 22 Resolution,[11] which we must for purposes of summary judgment, *Tropigas de P.R., Inc.*, 637 F.3d at 56, Plaintiff has not presented evidence of any actual harm flowing from that fact. Plaintiff thus fails to establish the third and fourth elements of his legal malpractice claim—causation and actual injury. *Portugués-Santana*, 725 F.3d at 25.

Under Puerto Rico law, a "Resolution" is an interlocutory order which is not immediately appealable as of right. Rule 42.1 of the Rules of Civil Procedure of Puerto Rico distinguishes between a "Judgment," on the one hand, and a "Resolution," on the other. While a "Judgment" is "any decision of the Court of First Instance that finally resolves the matter in litigation and from which an appeal lies," a "Resolution includes any ruling that puts an end to an incident *within the judicial process*." *In re Adoption of the Rules of Civ. Proc. of Puerto Rico*, 76 P.R. Offic. Trans. 38 (2009) (emphasis added); *see also Rivera v. González*, KLAN2011-1287, 2011 WL 6402654 at *1 (P.R. Ct. App. Oct. 13, 2011) (citing Rule 42.1 in distinguishing a judgment from an "interlocutory ruling").

This distinction under Puerto Rico law makes good sense and is in line with well-established principles under federal law. Federal courts, including the First Circuit and the District of Puerto Rico, have agreed that, "as a general rule, interlocutory orders are not immediately appealable because they lack the requisite finality." *Colón v. Blades*, 711 F. Supp. 2d. 228, 229 (D.P.R. 2010) (quoting *Torres v. Puerto Rico*, 485 F.3d 5, 8 (1st Cir. 2007)). Such appeals are always discretionary and can be granted only if the underlying interlocutory order "involves a controlling question of law as to which there is substantial

---

[11]   Though not dispositive for the purposes of this Order, the Court notes that by Plaintiff's own admission he was, at the very least, on constructive notice of the August 22 Resolution as of October 4, 2018. (**ECF No. 1 at 4–5**).

ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." *U.S. Fid. & Guar. Co. v. Arch Ins. Co.*, 578 F.3d 45, 53 n.10 (1st Cir. 2009) (quoting 28 U.S.C. § 1292(b)). In determining whether a discretionary interlocutory appeal is appropriate, federal courts have also applied the "collateral order doctrine," which requires satisfaction of specific elements, including that the interlocutory order at issue must "infringe rights which appellant could not effectively vindicate in an appeal after final judgment in the case," and that it must "involve an important or unsettled legal issue, rather than merely challenge discretionary trial court rulings." *United States v. Carpenter*, 494 F.3d 13, 25 (1st Cir. 2007) (quoting *United States v. Kouri-Pérez*, 187 F.3d 1, 5 (1st Cir. 1999).

Under this federal test, Plaintiff would not be able to make the requisite showing that the August 22 Resolution would have qualified for the rare remedy of discretionary appellate review. The Resolution is a list of findings of fact by the trial court, granting certain credits in favor of Plaintiff's ex-spouse in a liquidation of their conjugal assets. (**ECF No. 85-2**). There is no indication in the record as to whether or why Plaintiff believes the August 22 Resolution would qualify for the rare remedy of interlocutory appeal. While the federal test does not control, Plaintiff has not identified any Puerto Rico law which encourages departure from the well-established principles under federal law detailed above. Nor has he argued that the August 22 Resolution was not a "Resolution" within the meaning of Puerto Rico Rule of Civil Procedure 42.1. Nor has Plaintiff explained or provided any evidence of what facts or law he would have challenged in the August 22 Resolution, had he been informed of it sooner. There is simply no basis upon which this Court can conclude that the August 22 Resolution would have qualified for an

interlocutory appeal. Simply put, Plaintiff has failed to produce evidence that "would permit a factfinder to resolve the case in [his] favor." *White*, 985 F.3d at 68.

Moreover, the record makes clear that Plaintiff *did* have several opportunities to challenge the August 22 Resolution before it resulted in a final judgment by the State Court. A trial was held in the State Case where Plaintiff was represented by counsel,[12] and a judgment was entered on June 24, 2021, adopting the findings of the Resolution. (**ECF No. 84-2**); (**ECF No. 85 at 17**). Unsatisfied with the State Court judgment, Plaintiff then filed an appeal to the Puerto Rico Court of Appeals, which upheld the State Court judgment in its entirety. *See Rosado-Negrón v. Rivera-Padilla*, 2015-0528, 2022 WL 4139402 (P.R. Cir. Aug. 12, 2022). An interlocutory appeal was never necessary to safeguard Plaintiff's rights—he was able to raise any issues he had with the August 22 Resolution before both the trial court and the Puerto Rico Court of Appeals.

Plaintiff has failed to present any evidence of actual harm he suffered from his alleged inability to appeal the August 22 Resolution earlier in his case. He has not established that he had any right to an immediate, interlocutory appeal, much less that he would have succeeded on such an appeal. Plaintiff was able to—and did in fact— exercise his right to appeal. Whether and when Defendant specifically informed Plaintiff of the August 22 Resolution are no longer material facts; the hypothetical outcome of informing Plaintiff earlier would have been identical to the actual outcome of Plaintiff losing his appeal in the Court of Appeals.[13] Accordingly, Plaintiff suffered no harm as a

---

[12] At trial, Plaintiff was represented by Mr. Enrique Báez, who assumed representation after Defendant withdrew in September 2018. (**ECF No. 84 at 8, ¶ 31**).

[13] To the extent Plaintiff seeks to revisit the State Court's findings, the Court is precluded from doing so under the domestic relations exception. *See Irish v. Irish*, 842 F.3d 736, 741 (1st Cir. 2016) (finding division of marital property falls within this exception because "federal courts have no business allocating property that should be in the custody of a state court or interfering with a distribution already made by a state court.") (internal citation and quotations omitted). The Court is also barred from doing so under the

result of Defendant's purported breach, and therefore cannot meet the elements of his malpractice claim. *Portugués-Santana*, 725 F.3d at 25.

Summary Judgment is thus **GRANTED** in Defendant's favor on this issue.

IV. **Conclusion**

Absent a genuine issue of material fact, this case has no place before a jury. The Court finds there is no genuine issue of material fact here. Summary Judgment is thus **GRANTED** in Defendant's favor sua sponte. All remaining pending motions are **DENIED** as **MOOT**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 6th day of November, 2024.

*/s/ María Antongiorgi-Jordán*
**MARIA ANTONGIORGI-JORDAN**
**UNITED STATES DISTRICT JUDGE**

---

*Rooker-Feldman* doctrine, which prevents "lower federal courts from exercising jurisdiction over cases brought by state-court losers challenging state-court judgments rendered before the district court proceedings commenced." *Silva v. Massachusetts*, 351 F. App'x 450, 454 (1st Cir. 2009).